UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRYAN A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO. C17-1921-JPD <br><br> ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision be REVERSED and REMANDED.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-five year old man with the equivalent of a high school education. Administrative Record ("AR") at 40.[1] His past

---

[1] Plaintiff testified that he completed eighth grade, but failed the ninth grade repeatedly. AR at 40. He later obtained his GED. AR at 40.

ORDER - 1

work experience includes employment as a software tester, dishwasher at a restaurant, kitchen helper, and carpentry/masonry engineer. AR at 43-47, 59. Plaintiff was last gainfully employed as a dishwasher at the Epulo restaurant in Edmonds. AR at 42, 48.

On July 21, 2014, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of February 1, 2011. AR at 17. During the administrative hearing, however, plaintiff amended his alleged onset date to May 7, 2014. AR at 39. Plaintiff asserts that he is disabled due to anxiety, depression, homelessness, dental problems, and osteopenia. AR at 66.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 17, 118-25, 129-40. Plaintiff requested a hearing, which took place on July 26, 2016. AR at 36-63. On September 30, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform his past relevant work as a kitchen helper, or alternatively, a specific job existing in significant numbers in the national economy. AR at 14-31. Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On January 4, 2018, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

ORDER - 3

423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V. DECISION BELOW

On September 30, 2016, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since February 1, 2011, the alleged onset date.

3. The claimant has the following severe impairments: degenerative changes of the thoracic and lumbar spine with osteopenia, major depressive disorder, and post-traumatic stress disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, the claimant can lift and carry 50 pounds occasionally and 25 pound frequently and can sit, stand, and/or walk for about six hours a day for each function with normal breaks. The claimant is limited to occasional climbing of ladders, ropes, and scaffolds and is able to frequently climb stairs or ramps, balance,

stoop, kneel, crouch, or crawl.  The claimant is limited to infrequent superficial interaction with the general public, occasional superficial interaction with co- workers, and occasional interaction with supervisors.  Further, the claimant is limited to occupations with a specific vocational preparation (SVP) rating of 1or 2.

6. The claimant is capable of performing past relevant work as a kitchen helper.  This work does not require the performance of work-related

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2011, through the date of this decision.

AR at 19-31.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?

2. Did the ALJ err in evaluating the opinion of plaintiff's mental health counselor?

3. Did the ALJ err in evaluating plaintiff's testimony?

4. Does substantial evidence support the ALJ's decision, despite the new evidence submitted by plaintiff to the Appeals Council?

5. Did the ALJ properly determine plaintiff's RFC?

Dkt. 10 at 1; Dkt. 13 at 1-2.

## VII. DISCUSSION

A. <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

ORDER - 6

*Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

> 2. *The ALJ Erred by Rejecting the Opinions of the Treating and Examining Physicians in Favor of Non-Examining Physicians*

The ALJ discussed and either rejected or gave "little weight" to the medical opinions of examining psychologist Georgie Knapp, Psy.D., plaintiff's treating psychiatrist James Basinski, M.D., and treating therapist Ashley Proto, M.S.W., M.H.P., in favor of the opinions of state agency physicians who neither examined nor treated plaintiff. AR at 26-29. In addition, the ALJ rejected significant social limitations assessed by Allan Breen, Ph.D., while professing to accord his opinion great weight. AR at 26. Plaintiff argues the ALJ erred by failing to provide specific and legitimate reasons for rejecting the treating and examining doctors' opinions in favor of the non-treating/non-examining doctors. The Court agrees, and finds that the ALJ's evaluation of the medical evidence in this case runs afoul of the hierarchy discussed in *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007). As this error must be corrected on remand, a brief discussion of the ALJ's errors with respect to each treating or examining provider is addressed below.

> 3. *Dr. Geordie Knapp, Psy.D.*

Dr. Knapp conducted a psychological evaluation of plaintiff in May 2014. AR 332-36. Plaintiff told Dr. Knapp that he was homeless, staying at the mission, and was seeking assistance due to depression and anxiety. AR at 332. Plaintiff reported a "vicious and belabored" childhood stating his father had "whipped the confrontational part out of [him]." AR 332. He related how his mother had been bothered by depression eventually committing suicide when he was 19. AR at 332. Plaintiff reported supporting himself through working and day trading on the internet with a small amount of money he had been able to keep

ORDER - 8

reinvesting, earning enough money to pay for a storage unit. AR at 332. Plaintiff reported he was living in a shelter, spending his day looking for work and chasing food. AR at 332. Dr. Knapp observed the following symptoms during his clinical interview: depressed mood, anhedonia, reexperiencing, avoidance, and increased arousal. AR at 333.

On mental status examination, he found plaintiff to be hypoactive and tense with slow quiet speech. He was oriented to person, time, and place, but his mood was described as anxious, depressed, and his affect was tearful. AR at 336. Dr. Knapp found plaintiff pleasant and cooperative. AR at 336. However, plaintiff only remembered 2 of 3 items after five minutes. AR at 335-36. Dr. Knapp diagnosed major depressive disorder (recurrent, severe without psychotic features) and chronic post-traumatic stress disorder (PTSD). AR at 333. Dr. Knapp also noted plaintiff's mother's suicide further impaired his ability to interact with others and that while plaintiff was "fairly able to get by, his disorders caused serious impairment in his ability to obtain and maintain employment." AR at 334. In assessing plaintiff's ability to perform basic work activities, Dr. Knapp opined he would have marked limitations in his ability to perform activities within a schedule; to maintain regular attendance and be punctual within customary tolerances without special supervision; and to communicate and perform effectively in a work setting. AR at 334. Dr. Knapp assessed a severe limitation in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR at 334.

The ALJ accorded little weight to the marked and severe limitations assessed by Dr. Knapp, due to the evaluation "showing largely intact mental functioning" and because Dr. Knapp opined that plaintiff could benefit with treatment. Specifically, the ALJ stated,

> The undersigned accords great weight to Dr. Knapp's opinion regarding those areas in which the claimant will have up to moderate difficulties given that this aspect of his opinion is consistent with the results of his contemporaneous

ORDER - 9

> evaluation showing that although the claimant presented with depressed mood and flat affect and likewise had speech characterized by limited word production and that was slow and low in volume, he was otherwise alert and fully conscious with logical and progressive presentation, pleasant and cooperative, and was noted to take the evaluation seriously and give considered answers while doing his best on the tasks that were presented to him. Similarly, although the claimant was noted to have memory outside of normal limits in that he was only able to recall two out of three items after five minutes, he otherwise had thought process and content, orientation, perception, fund of knowledge, concentration, and abstract thought all within normal limits. Based upon this evaluation showing largely intact mental functioning, the undersigned accords little weight to Dr. Knapp's opinion regarding those areas in which the claimant will have marked or severe difficulties, as well as his assessed GAF score. According little weight to these aspects of Dr. Knapp's opinion is also consistent with the fact that he opined that the claimant would benefit from counseling and case management, thus indicating that the claimant's mental health symptoms are not intractable.

AR at 27.

The ALJ's reasons were not specific, legitimate, or supported by substantial evidence. The ALJ's own lay assertion that plaintiff had "intact mental functioning," without more, is insufficient to reject Dr. Knapp's findings concerning the marked and severe limitations that would interfere with plaintiff's abilities to perform activities within a schedule, maintain regular attendance, communicate and perform effectively in a work setting, and complete a normal work week. As discussed below, Dr. Knapp's findings also appear to be consistent with the findings of Dr. Basinski and plaintiff's treating therapist, Ms. Proto. AR at 334, 423-29. An ALJ may not substitute his or her judgment for that of a medical professional, nor may the ALJ make independent medical findings.

The ALJ's rejection of Dr. Knapp's findings based upon his statement that plaintiff "would benefit from counseling and case management, thus indicating that the claimant's mental health symptoms are not intractable" is also not specific and legitimate. Although the ALJ could reasonably reject Dr. Knapp's opinion based upon evidence of actual medical improvement with treatment, the fact that Dr. Knapp thought that perhaps plaintiff *could* – but

ORDER - 10

has not – benefitted from counseling and treatment does not indicate his symptoms would not interfere with his ability to work. Dr. Knapp also did not indicate that if plaintiff obtained treatment, he would then be able to perform full-time work despite his impairments. The ALJ's rejection of Dr. Knapp's opinion that "while fairly [plaintiff is] able to get by, his disorders cause serious impairment in his ability to obtain and maintain employment" was not supported by substantial evidence. AR at 27, 334.

        4.     *James Basinski, M.D.*

Plaintiff presented to Dr. Basinski in July 2014 for a psychiatric intake examination. AR at 349. Plaintiff reported disappointment that he would not be meeting with Dr. Basinski more often, as well as feeling moderately depressed and reluctant to take medications. AR at 349. Dr. Basinski noted he was tearful a couple of times during the interview. AR at 349. Mental status exam revealed plaintiff to be fairly kempt, he was somewhat restless at times, but made good eye contact, his speech was normal rate and volume although talkative, his affect was moderately anxious, with his mood depressed and anxious. AR at 350. Plaintiff's thought form was circumstantial, and he was mildly distractible, with intact memory and fair insight and judgment. AR at 350. Dr. Basinski diagnosed major depressive disorder, with anxiety, rule out cannabis use disorder, and likely a personality disorder. AR at 349. He assessed plaintiff as having a family history of depressive disorder with suicide recurrent mood and anxiety problems, cannabis use, and psychosocial marginalization. AR at 350. Dr. Basinski further noted that plaintiff had some personality vulnerabilities around mood lability, interpersonal vulnerability, and difficulty adjusting, perfectionism, and a need to control to actual work situations and opportunities. AR at 350.

The ALJ accorded this assessment little weight because it was vague in providing specific workplace limitations and was based in large part on plaintiff's subjective complaints

ORDER - 11

AR at 28. However, the purpose of this intake evaluation was to establish psychiatric care and a plan of treatment, rather than assess plaintiff's workplace limitations. AR at 349-50. In addition, the ALJ's second reason for according this opinion little weight, because the findings "appear[] to be based in large part on the claimant's own subjective complaints" rather than upon objective findings of the mental status examination, is not specific and legitimate. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that "psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."). In light of the fact that Dr. Basinski's mental status examination revealed restless behavior, moderately anxious affect, depressed and anxious mood, and circumstantial speech, the ALJ's conclusion that Dr. Basinki's opinion was inconsistent with his clinical observations on mental status examination is not supported by substantial evidence.

In March 2016, Dr. Basinski prepared a Psychological/ Psychiatric Evaluation for the Department of Social and Health Services (DSHS) which did include an assessment of plaintiff's workplace limitations. AR at 432-26. Dr. Basinski had provided counseling services and coordinated plaintiff's care on at least nine different occasions at that time. AR at 349-50, 352, 423-26, 444, 514, 550, 567, 595, 617, 708, 718-19. Dr. Basinski noted plaintiff's symptoms of low mood, hopelessness, low motivation, social anxiety, irritability, rumination, and food restriction, all of which were moderate to severe and chronic for the past two years and continuing. AR at 424. Dr. Basinski opined that plaintiff would have marked limitations in his ability to understand, remember, and persist in tasks by following short instructions; make simple work-related decisions; and to complete a normal work day and work week

ORDER - 12

without interruptions from psychologically based symptoms. AR at 424. Dr. Basinski also found plaintiff would have severe limitations in eight different areas, including the ability to set realistic goals and act independently; to maintain appropriate behaving in a work setting; to perform activities within a schedule, to maintain regular attendance; and to be punctual within customary tolerances without special supervision. AR at 424. Dr. Basinski opined that with available treatment, plaintiff would be impaired for 24 months. AR at 425.

The ALJ accorded Dr. Basinski's March 2016 opinion little weight as he thought the significant limitations were inconsistent with his objective findings. AR at 29. As with Dr. Knapp, the ALJ cherry-picked the few positive findings from the form to support his rejection of Dr. Basinski's opinion. For example, the ALJ acknowledged that plaintiff presented on mental status examination as "restricted and superficially deferential with an undercurrent of resistance," as well as "profoundly" negative thinking. Nevertheless, the ALJ apparently dismissed these observations, because other aspects of the mental status examination, such as plaintiff's eye contact, orientation, and fund of knowledge, were within normal limits. AR at 29. The ALJ's reasoning is not specific, legitimate, or supported by substantial evidence. *See Attmore v. Colvin*, 827 F.3d 875, 877 (9th Cir. 2016) (noting that the ALJ is not permitted to cherry pick from mixed results to support a denial of benefits, as "the examples an ALJ chooses 'must *in fact* constitute examples of a broader development.'") (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). The ALJ also did not address any of plaintiff's treatment records in evaluating Dr. Basinski's opinion, although those treatment records provided significant background for Dr. Basinski's March 2016 opinion. *See Garrison*, 759 F.3d at 1013-14 (an ALJ errs when he "entirely ignored most of his treatment records" of a provider, when the opinions expressed in the provider's check-box form were based on significant experience with the claimant and supported by numerous records). Accordingly,

ORDER - 13

the ALJ did not provide legally valid reasons for rejecting the July 2014 or March 2016 opinions of Dr. Basinki.

        5.      *Alan Breen, Ph.D.*

Dr. Breen, an examining psychologist, performed a neuropsychological evaluation of plaintiff in October 2011. AR at 325-31. Specifically, Dr. Breen conducted a clinical interview and administered a battery of tests. Plaintiff reported a history of abuse by his father who would lock him in his room with his brother, and not provide any food. AR at 325. Plaintiff also reported how his mother struggled with depression and committed suicide when he was nineteen. AR at 325. Plaintiff related a history of working multiple jobs, losing his last job when he forgot to lock the door when he left. AR at 325-26. During the mental status examination, plaintiff was noted to need a shower and a shave. AR at 326. He had logical organized thinking with no evidence of attention, memory or language difficulties. AR at 326. However, he was "clearly depressed," endorsing signs of major depression characterized by anhedonia, poor concentration, low energy, hypersomnia, and low self-esteem. AR at 326. Plaintiff reported rapid mood swings, having three to four-day periods when he would sleep just four hours with increased impulsivity, irritability, racing thoughts, and distractibility, which Dr. Breen found consistent with hypomanic episodes or perhaps bipolar II disorder. AR at 326. Dr. Breen observed plaintiff to be cooperative, but "distant from the process." AR 326. Plaintiff gave up quickly when he did not know the answer. AR at 326. He was sarcastic, and on logical memory testing he did very poorly saying even though he knew it was test, he did not care enough to try. AR at 326.

Dr. Breen's diagnostic impression was rule out cyclothymia and rule out marijuana abuse. AR at 328. He recommended that plaintiff be stabilized with social services including welfare, a stable place to live, and access to treatment. AR at 328. Dr. Breen noted plaintiff

ORDER - 14

had an educational goal, but no vocational goal. AR at 328. Dr. Breen thought plaintiff could handle a number of routine jobs without much difficulty, but he would need to be able to work no more than twenty hours per week in order to accommodate his educational plans. AR at 328. Dr. Breen prepared a functional loss indicator and indicated that in the area of interpersonal skills, plaintiff would have a pervasive pattern of social and interpersonal deficits such as extreme awkwardness, withdrawal, anxiety, anger, aggression, and suspiciousness and that he would isolate himself from others and/or withdraw from interpersonal situations. AR at 329-30.

The ALJ accorded Dr. Breen's opinion great weight except for the portion that limited plaintiff to working no more than twenty hours a week. AR at 26. However, the ALJ made no finding as to Dr. Breen's opinion that plaintiff would have a pervasive pattern of social and interpersonal deficits or would isolate or withdraw from interpersonal situations. Thus, the ALJ once again cherry-picked evidence from a provider's report that would support his conclusion, without providing adequate reasons to reject the findings he did not agree with. *See Ghanim*, 763 F.3d at 1164. This was err, as Dr. Breen's indication of significant difficulties in social and interpersonal situations appears entirely consistent with the assessments of Drs. Basinski and Knapp in these areas.

      6.  *Ashley Proto, M.S.W.*

Plaintiff's mental health counselor, Ashley Proto, M.S.W., provided mental health counseling to plaintiff on at least twenty-eight occasions during the relevant period. AR 337, 339, 341, 373, 390, 395, 397, 406, 440, 449, 479, 610. On June 20, 2016, Ms. Proto (in conjunction with Dr. Basinski, who co-signed Ms. Proto's opinion) prepared a Medical Source Statement of Ability to Do Work-Related Activities (Mental). AR 427-29. She noted the assessment was for the approximately two-year period commencing on June 3, 2014, through

ORDER - 15

the date of the assessment. AR 427. She assessed marked limitations in plaintiff's ability to understand, remember, and carry out detailed instructions, and extreme limitations in his ability to make judgments on simple work-related decisions. AR at 427. She also assessed marked limitations in his ability to interact appropriately with co-workers and respond appropriately to work pressures in a usual work setting, and extreme limitations in his ability to interact appropriately with supervisors and respond appropriately to changes in a routine work setting. AR at 428.

In her handwritten comments, she opined that plaintiff's symptoms of depression, which included low energy, poor motivation, impaired concentration and at times disorganization in thought, impacted his ability to remember and follow detailed instructions and impacted his ability to make appropriate work-related decisions. AR at 427. She further opined that plaintiff's depression and anxiety interfered with how he related to others, and had contributed in the past to his inability to sustain full-time employment. AR at 428. She noted plaintiff had "rigid and obsessive thought processes which impair his ability to adjust to changes in routine." AR at 428. Finally, she noted that as a result of his home life, he "developed perfectionist and controlling tendencies which cause vulnerabilities in work situations and interpersonal relationships, and "particularly [plaintiff] has struggled with supervisors and authority figures which has resulted in multiple job losses and inability to respond appropriately to workplace stressors." AR at 428.

Ms. Proto, as a mental health counselor, is a lay witness. In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent

ORDER - 16

evidence, and cannot be disregarded without comment. *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Here, the ALJ summarized Ms. Proto's opinion, but found that "although Ms. Proto appears to see the claimant on a frequent basis, little weight is accorded to the indications described above given that she is referred to in the record as the claimant's case manager . . . and is thus an advocate for the claimant's disability claim." AR at 28. The ALJ continued, "[a]long these lines, the significant limitations that she indicated do not appear to be based entirely on objective findings." AR at 28. The ALJ then noted that plaintiff "regularly described the claimant as cooperative and presenting with normal rate and volume of speech, logical and linear thought form, appropriate thought content," among other normal findings, and "such observations are generally inconsistent with the degree of limitations that she indicated and thus mitigate the overall persuasiveness of her medical source statement." AR at 28.

The Court finds that the ALJ's rejection of Ms. Proto's opinion regarding plaintiff's limitations, based upon the fact that her treatment notes included some other normal findings, is not valid, as the "normal" findings at issue do not contradict her opinion. The ALJ did not actually provide a reason for rejecting plaintiff's opinion, for example, that plaintiff has struggled with supervisors and authority figures, resulting in multiple job losses and inability to

ORDER - 17

respond appropriately to workplace stressors.  Moreover, the fact that a therapist is a claimant's assigned "case manager" does not indicate bias, or provide a germane reason to reject their opinion.  The ALJ erred in rejecting Ms. Proto's opinion without valid reasons.

Accordingly, on remand, the ALJ shall reevaluate all the medical opinion evidence of record in light of the direction provide by this Order.  In addition, because this case is being remanded for reconsideration of the medical evidence, and the ALJ's assessment of plaintiff's testimony was inescapably linked to his conclusions regarding the medical evidence, the ALJ's assessment of plaintiff's testimony is also reversed and the issue remanded.  After re-evaluating the medical evidence, including the January 4, 2017 opinion of Dr. Basinski and Ms. Proto that was submitted to the Appeals Council following the ALJ's decision, the ALJ should reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

## VIII.   CONCLUSION

For the foregoing reasons, the Court ORDERS that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 20th day of November, 2018.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge